GOBITIS et al. v. MINERSVILLE SCHOOL
DIST. et al.

No. 9727.

District Court, E. D. Pennsylvania.
June 18, 1938.

H. M. McCaughey, of Philadelphia, Pa., for complainants.

John B. McGurl, of Minersville, Pa., and Rawle & Henderson, of Philadelphia, Pa., for defendants.

MARIS, District Judge.

This suit in equity was brought to enjoin the individual defendants from continuing to prohibit the attendance of the minor plaintiffs at the Minersville Public Schools because of their refusal to salute the national flag as required by the defendants. From the evidence I make the following special findings of fact:

Plaintiff Walter Gobitis is a citizen of the United States and of the Commonwealth of Pennsylvania and is a resident of the Borough of Minersville, Schuylkill County, Pennsylvania. Plaintiffs Lillian Gobitis (hereinafter called Lillian) and William Gobitis (hereinafter called William) are his children. Lillian was born November 2, 1923, and is now fifteen years of age. William was born September 17, 1925, and is now thirteen years of age. Both of them are citizens of the United States and of the Commonwealth of Pennsylvania and reside with their parents in the Borough of Minersville where they have lived for many years.

The Minersville School District is a public school district of the Commonwealth of Pennsylvania embracing the territory of the Borough of Minersville. The individual defendants David I. Jones, Dr. E. A. Valibus, Claude L. Price, Dr. T. J. McGurl, George Beatty, Thomas B. Evans and William Zapf were at the time this suit was brought the duly elected and acting members of the Board of Education (hereinafter called the Board) of the Minersville School District having the management and control of the Minersville Public Schools. David I. Jones is no longer a member of the Board, having been succeeded by Dr. E. W. Keith. George Beatty is no longer a member of the Board having died January 30, 1938. Defendant Charles E. Roudabush is the superintendent of the Minersville Public Schools appointed by and acting under the direction and supervision of the Board. All of the surviving defendants are residents of the Borough of Minersville and citizens of the Commonwealth of Pennsylvania and of the United States.

The Minersville Public Schools were and are free public schools under the supervision and jurisdiction of the Board. William and Lillian were placed in the Minersville Public School by their father, Walter Gobitis, at the beginning of the school year 1935-1936 and attended the school until November 6, 1935.

On November 6, 1935 at a regular meeting of the Board the following school regulation was adopted: "That the Superintendent of the Minersville Public Schools be required to demand that all teachers and pupils of said schools be required to salute the flag of our country as a part of the daily exercises. That refusal to salute the flag shall be regarded as an act of insubordination and shall be dealt with accordingly."

Lillian and William having failed to salute the national flag at the daily exercises of the Minersville Public School, de-

fendant Charles E. Roudabush on November 6, 1935, at the direction of the Board. and immediately after the adoption of the regulation above quoted, publicly announced: "I hereby expel from the Minersville Schools Lillian Gobitis, William Gobitis and Edmund Wasliewski for this act of insubordination, to wit, failure to salute the flag in our school exercises." Since that date Lillian and William have not been permitted to attend the Minersville Public School.

Lillian and William and their father, Walter Gobitis, are members of an association of Christian people calling themselves Jehovah's Witnesses. Each of the plaintiffs as a member of that association has covenanted with Jehovah God to do His will and to obey His commandments. They accept the Bible as the word of God and conscientiously believe that a failure to obey the precepts and commandments laid down therein will in due time result in their eternal destruction. Each of the three plaintiffs. sincerely and honestly believes that the act of saluting a flag contravenes the law of God because (a) it is a violation of the divine commandment stated in verses 3, 4 and 5 of the twentieth chapter of the Biblical book of Exodus that "Thou shalt have no other gods before me. Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water under the earth; Thou shalt not bow down thyself to them, nor serve them * * *", in that such a salute signifies that the flag is an exalted emblem or image of the Government and as such entitled to the respect, honor, devotion, obeisance and reverence of the salutor, and (b) it means in effect that the person saluting the flag ascribes salvation and protection to the thing or power which the flag stands for and represents, and that, since the flag and the Government which it symbolizes are of the world and not of Jehovah God, it is wrong to salute the flag and to do so denies the supremacy of Almighty God, and contravenes his express command as set forth in Holy Writ.

The refusal of Lillian and William to salute the flag in the Minersville Public School was based solely upon their sincerely held religious convictions that the act was forbidden by the express command of God as set forth in the Bible. Both they and their father, Walter Gobitis, are loyal American citizens who honor and respect their state and country and who are willing and ready to obey all its laws which do not conflict with what they sincerely believe to be the higher commandments of God. Their refusal to salute the flag was . not intended by them to be disrespectful to the Government and it did not promote disrespect for the Government and its laws nor endanger the public safety, health or morals or the property or personal rights of their fellow citizens.

The enforcement of defendants' regulation requiring the flag salute by children who are sincerely opposed to it upon conscientious religious grounds is not a reasonable method of teaching civics, including loyalty to the State and Federal Government, but tends to have the contrary effect upon such children.

From the last week of December, 1935, to the end of May, 1937 (except for holidays and vacation periods), Lillian attended the Jones Kingdom School at Andreas, Pennsylvania, and from September, 1937 to the date of hearing, February 15, 1938 (except for holidays and vacation), she attended the Pottsville Business College. From the last week of December, 1935 to the date of hearing, February 15, 1938 (except for holidays and vacation periods), William attended the said Jones Kingdom School. Both the Jones Kingdom School and the Pottsville Business College are private schools whose patrons are required to pay for the tuition of the children attending them.

Up to the present time Walter Gobitis has expended for the education of Lillian since November 6, 1935 a sum in excess of $600 and he will be required to expend for her education in the future during the period she is required by the Pennsylvania School Code, 24 P.S.Pa. § 1421 et seq., to remain in school a sum not less than $600, or $1,200 in all. Up to the present time Walter Gobitis has expended for the education of William since November 6, 1935 a sum in excess of $800 and he will be required to expend for his education in the future during the period he is required by the Pennsylvania School Code to remain in school a sum not less than $1,200, or $2,000 in all.

*Discussion.*

This suit has been brought to restrain the enforcement against the minor defendants of a school regulation requiring a daily

salute to the flag. It is based upon the ground that the enforcement of this regulation as a condition of the exercise of their right to attend the public schools, infringed the liberty of conscience guaranteed them by the Fourteenth Amendment to the Federal Constitution, U.S.C.A.Const. Amend. 14.

The important legal questions which the case raises were fully discussed in our opinion denying the defendants' motion to dismiss the bill. 21 F.Supp. 581. We there held that the liberty guaranteed by the Fourteenth Amendment includes liberty to entertain any religious belief and to do or refrain from doing any act on conscientious grounds, which does not prejudice the safety, health, morals, property or personal rights of the people. We further held that the minor plaintiffs have a right to attend the public schools and that to require them, as a condition of the exercise of that right, to participate in a ceremony which runs counter to religious convictions sincerely held by them, would violate the Pennsylvania Constitution and infringe the liberty guaranteed them by the Fourteenth Amendment, unless it should appear that the public safety, health or morals. or the property or personal rights of their fellow citizens would be prejudiced by their refusal to participate.

The facts as I have found them sustain the allegations of the bill. No one who heard the testimony of the plaintiffs and observed their demeanor upon the witness stand could have failed to be impressed with the earnestness and sincerity of their convictions. While the salute to our national flag has no religious significance to me and while I find it difficult to understand the plaintiffs' point of view, I am nevertheless entirely satisfied that they sincerely believe that the act does have a deep religious meaning and is an act of worship which they can conscientiously render to God alone. Under these circumstances it·is not for this court to say that since the act has no religious·significance to us it can have no such significance to them. As we said in our former opinion, 21 F.Supp. 581, 584, under our Constitutional principles "If an individual sincerely bases his acts or refusals to act on religious grounds they must be accepted as such and may only be interfered with if it becomes necessary to do so in connection with the exercise of the police power, that is, if it appears that the public safety, health or morals or property or personal rights will be prejudiced by them. To permit public officers to determine whether the views of individuals sincerely held and their acts sincerely undertaken on religious grounds are in fact ,based on convictions religious in character would be to sound the death knell of religious liberty."

I think it is also clear from the evidence that the refusal of these two earnest Christian children to salute the flag cannot even remotely prejudice or imperil the safety, health, morals, property or personal rights of their fellows. While I cannot agree with them I nevertheless cannot but admit that they exhibit sincerity of conviction and devotion to principle in the face of opposition of a piece with that which brought our pioneer ancestors across the sea to seek liberty of conscience in a new land. Upon such a foundation of religious freedom our Commonwealth and Nation were built. We need only glance at the current world scene to realize that the preservation of individual .liberty is more important today than ever it was in the past. .The safety of our nation largely depends upon the extent to which we foster in each individual citizen that sturdy independence of thought and action which is essential in a democracy. The loyalty of our people is to be judged not so much by their words as by the part they play in the body politic. Our country's safety surely does not depend upon the totalitarian idea of forcing all citizens into one common mold of thinking and acting or requiring them to render a lip service of loyalty in a manner which conflicts with their sincere religious convictions. Such a doctrine seems to me utterly alien to the genius and spirit of our nation and destructive of that personal liberty of which our flag itself is the symbol.

It follows that the regulation in question, however valid and reasonable it may be when applied to others, cannot constitutionally be applied to the plaintiffs as a condition of the right ·of Lillian and William to attend the public schools and of their father to have them do so.

A question of jurisdiction remains to be considered. In our former opinion we held· that the case is one arising under the Constitution of the United States of which this court has jurisdiction under subdivision (1) of Section 24 of the Judicial Code, 28 U.S.C.A. § 41(1), if the matter in

controversy exceeds the sum or value of $3,000. The bill contained a clear averment that the jurisdictional amount was involved. This, however, was controverted by the answer. The amount involved is to be measured by the value of the right to be protected. In this case the right involved is the right to attend the public schools and its value may be measured by the cost of obtaining an equivalent education at private institutions. I have found that cost in the case of Lillian to be $1,200 and in the case of William to be $2,000.

The defendants urge that the rights of Lillian and William are separate rights, the value of which must be separately considered for jurisdictional purposes, and since neither reaches $3,000 the jurisdictional amount is not involved and the bill must be dismissed. The defendants, however, overlook the fact that the obligation to provide for the education of these two children rests upon their father, the plaintiff Walter Gobitis, who is a proper party to the suit, since his right to have his children educated in the public school is also affected. Furthermore he is required, by Section 1414 of the Pennsylvania School Code as amended (24 P.S.Pa. § 1421), to send his children to school, and under Section 1423 (24 P.S.Pa. § 1430) is guilty of a misdemeanor if he fails to comply with the provisions of the act regarding compulsory school attendance. The amount involved in the suit, so far as he is concerned is, therefore, $1,200 plus $2,000. These amounts he may aggregate for the purpose of determining jurisdiction. Kimel v. Missouri State Life Ins. Co., 10 Cir., 71 F.2d 921. This court, therefore, has jurisdiction of the bill as to him and consequently as to the minor plaintiffs also. Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660.

I accordingly reach the following conclusions of law:

This court has jurisdiction of the suit.

The regulation adopted by the defendants on November 6, 1935, as applied to the minor plaintiffs as a condition of their right to attend the Minersville Public Schools, deprives the plaintiffs of their liberty without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

The plaintiffs are entitled to an injunction against the defendants restraining them from continuing in force the order expelling the minor plaintiffs from the Minersville Public School and prohibiting their attendance at said school and from requiring the minor plaintiffs to salute the national flag as a condition of their right to attend the said school.

A decree may be entered in accordance with this opinion.